Good morning, honors and police of the court. My name is Dina Young and I represent Appellant Marcus Belton in this case. If I may, I'd like to reserve approximately two minutes of my time to rebuttal. You'll have to keep track of your time. Yes, you certainly will. Thank you. Mr. Belton was denied a fundamental right to make a decision whether or not to testify in this case by a ruling of this court, of the district court, which was, was mature and possibly wholly unnecessary. You mean that ruling said that you'd have to do an enforcement answer for him? Yes, Your Honor. Why is he getting potential prejudice from the appellant's family members since he didn't actually testify? I don't believe this is a situation where prejudice can be shown. The ruling puts Mr. Belton in a position of being told that if he testifies, he's getting to look insane. I mean, we don't know that anybody would view him as insane. Suppose the judge gave an instruction to the jury that said, please don't make anything of the fact that he's going to be doing this enforcement answer for me. That's what I've ordered him to do. It's not just testing for him like any other witness. So isn't it just press work? No, it's not, Your Honor. We have a defendant who started out representing himself on the day of trial and told this trial judge, look, judge, I cannot do this. I'm not capable of doing this. At that point, the judge had to stand by counsel to take over the trial. So now we're in a situation where Mr. Belton, if he gets to this point where he has to ask himself questions, he's not capable. He's not capable of proceeding in that fashion. This isn't a situation like back to the case, which the government cited, where the defendant was already representing himself and was in a position to have to do those things anyway. But wasn't the court's decision by the trial court not to allow narrative commentary necessarily to preserve the rules of evidence? How would the rules of evidence be preserved if this narrative was allowed and what might be blurted out and held strong in such an entirely unremarkable according to the rules of evidence? It may be. It happens in the government that has the burden of jumping in and objecting where necessary. But I want to back this up a little bit because the government has repeatedly argued here that this is just about you following the quorum. But it's not. Because this decision was not right. The judge did not need to make this ruling. Mr. Belton had not informed the court. Yes, I wish to testify. And counsel did not inform the court. Mr. Belton wishes to testify, but I cannot examine him. If you look at the record in this case. I'm confused about this then because your argument is that this ruling occurred in your client's interest. But if your client wasn't going to testify, then how did it occur to him? It wasn't that he was not going to testify. It's that he had not made a decision whether to testify or not. So by telling him, if you're going to testify, you're going to have to do it this way, it interferes with his free will, essentially, in making a decision whether to testify or not. But doesn't your argument have to be that he wouldn't have testified but for this? Otherwise, I don't see how you have a clue on this point at all. I think it's the interference with the right to choose whether to testify or not. I'm feathered by these kinds of rulings. But this isn't an evidentiary ruling. If the judge had waited until a decision had been made and counsel had told the court, look, Mr. Belton wants to testify, but, excuse me, I cannot absolutely examine him. And then the judge waited, and then the judge made these kind of rulings. I think we'd be in a different situation. I don't think that would be any more right, but I think we'd have a different situation. Well, but isn't that exactly our situation? Because, presumably, with counsel representing you, if counsel had said, it's no problem, I'll be asking you the questions, then we wouldn't be here, or your argument would be not relevant. So it seems to me only relevant if he were going to testify, and he knew we were going to testify without questions from counsel. And that's why the court's ruling was premature, because that is not state of the record. The state of the record is defense counsel saying, wait, judge, we are not there yet. I don't understand why you're arguing that here today. I mean, if he wasn't going to testify, then we don't have a problem. So it seems to me still that you don't have a claim unless he wanted to testify. The state of the record is that we don't know whether he wanted to testify or not. That's the point, though. The point is his decision whether or not to testify was interfered with by this premature rule. That's the thing that I was asking about initially. It seems to me only a guess that it's an interference, because there are many ways that a trial judge can control the jury's response, such as the method that I've mentioned, that would not in any way make him look silly or bad or any of the things that you're alleged to do. So we don't know that there's any possible effect on his decision or any possible prejudice. I just don't see how you can see through his claim. I think it fundamentally interferes with the right to make the decision whether to testify or not. And under the circumstances, it may have also interfered with his representation in counseling, just with such a premature decision. He keeps it premature. When I was a trial lawyer, I always appreciated knowing the rules ahead of time. So you're claiming bias because the judge penalized it and announced the rules. Do you, or he, is doing your fine working eye to determine whether he would want to testify and emphasize prematurity a lot? But isn't that a benefit to let him know he had it done, what the rules of the game would be? And I always liked that when I was a trial lawyer. Well, we've all seen defendants, especially defendants who represent themselves, go through this convoy. Hello, what is your name? My name is. How are you feeling today? I'm doing great. No matter how you do it and no matter what the judge says in terms of, I don't know how the judge would instruct on that. What is the judge going to say? Well, he looks silly, but I told him to do that. Well, it is not. No, but it is. But that is fundamentally. A trial judge can say there's going to be an unusual procedure here, and you should consider his testimony as more than any other witness in the court. Thank you. I love him in any way because I've instructed that he do this in a crucially innocent format, and we presume that juries follow those instructions. I don't understand why that wouldn't mitigate any potential prejudice. The other aspect, though, is that you have a defendant who has told the court, I'm not capable of representing myself, and then you're asking that defendant, in the same order, to construct an exam consistent with the rules of evidence. But you stand by counsel even though I'm not asking you questions, even if you see stupid, crappy questions. We don't know that. Counsel suggested that that is not the situation. We don't know. So judges say your argument is that this was premature and we don't know enough about what counsel would have done, what your client would have done. Why don't we hold that against your client? Why should this be a waiver at that point that he can put on the record, I want to testify and my counsel can't help me, and you have created this situation. It seems like now I'm starting to worry you didn't even preserve this claim. That may be, now again, an effective assistance of counsel claim that can be raised in a 2255. That's possible. We're going to have to wait for the records. Correct. And it may be this issue is a right. So is that what you want us to rule, just that this was waived because the record isn't clear enough about what happened? I don't believe it is a waiver. I mean, you have a fundamental interference with a constitutional right. That is not an issue that's waivable. This is not an evidentiary ruling. The right is to testify on your own behalf if you want to. It's not to decide in a vacuum whether to testify, right? I mean, in order to have that right be violated, I think he needed to want to testify. I know I'm repeating myself, but I'm just confused about what your argument is on this point. Well, I think the court didn't, I don't think there's an adequate record as to why we haven't reached the point where there was any inquiry by the district court as to what was going to happen, what the issues were, what remedy might be appropriate. We just weren't there, and that's why I keep saying the ruling was created short. This was not a ruling the court needed to make at that time, and defense counsel and the defendant both severely objected. We have an unusual situation in this case in that Mr. Belton was also being allowed to make some of his own objections in writing. So we have a situation where we have sort of a hybrid representation, and I think that plays into this scenario, too, because we don't really know who's in charge. It's not that he hasn't. Judy, is it part of your argument that your client was not asking questions of witnesses? I'm sorry? So Mr. Belton was not asking the questions of witnesses before this point in the trial, was he? No, not at that point yet, counsel. Up until the morning of jury selection, Mr. Belton was self-represented. On the morning of jury selection, he told the judge, I can't do this and stand by counsel to go with the case. So in all other aspects, counsel was asking the questions, but they had set up a system where Mr. Belton could make objections. He had to do it in writing, and they were reviewed and discussed at the end of the day. So then we already have a situation where we have a strange, a trying-to-client relationship, and now we compound that by saying, well, if your attorney advises you not to testify, you're going to have to testify this way, and you're going to have to ask your own questions. And he's already told the judge he's not capable of constructing an exam, which is not good. Evaluating the trial court's rulings here, is it appropriate for us to look at the context? Your client did have at least four attorneys that were evidence of your client. Making outbursts in court and such, are those relevant in determining how the trial judge ruled on this? To some extent, if we have a situation like someone telling their parents and then asking for mercy as an orphan, he created the situation, and now he's taking advantage of the situation he created. And if we were to rule as your request, wouldn't we be inviting future defendants to hire and fire four or five lawyers to represent themselves briefly, and then to not represent themselves, and to create a habit from which they would then claim the rights of the prejudiced? I don't think that's something we need to invite. We have that situation all the time. But what we're focused on is whether or not Mr. Pelfe was practically denied his right to testify, because he was told if he was going to testify, he'd have to testify in this crazy fashion. And I'm with an attorney in the room. I don't know how you explain that. And yes, then we got to a different stage that it might have been appropriate to limit Mr. Pelfe's behavior, but we weren't there yet. And I believe that is my time for now. You may save the remaining time. Good morning. Ladies and court, my name is Julius Lerman, and I represent the United States. Your Honor, so Marcus Pelton got a fair trial. He got the trial he wanted. And as the Court has already alluded to, all the defects that he's complaining of in his appeal flow from decisions he made, including tactical choices.  I'm happy to answer questions about the continuance issue or any of the other issues, but it seems like the Court is perhaps most interested in the loose issue about testimony. So on that issue, we think it's squarely advised here this is exactly the kind of situation that the loose rule is designed for, because as the Court's already discussed, it's too hard to look into a defendant's mind and know what motivated this decision, whether to testify. So loose was about an eliminated rule, like about evidence that would come in or not. Are you familiar with our case, United States v. Justice Shaleen, that says loose doesn't apply when the claim would be a constitutional claim rather than a fiduciary claim? No, I'm not familiar with that case. But I would point the Court to the Johnson case, which we've cited in our brief from 1990, and that involved a Rule 403 ruling where the defendant, if he decided to testify, would be required to hold up an article of clothing. And by not testifying, the Court held that the defendant waived his right to challenge that evidentiary ruling. And the Court has suspended loose. It's not an evidentiary ruling, though, right? Is there a way to construe the clothing thing not as an evidentiary ruling? Well, you can say that it infringes on his right to decide whether to testify. The defense counsel here, my opponent, said several times that this was not an evidentiary ruling, and we disagree with that. We think this was a Rule 611 ruling concerning the format in which the defendant's testimony comes in. It's also not the case that I don't think the record is nearly as clear-cut as the district judge said to the defendant here. If you want to testify, you must be in this format. This conversation arose because the government brought the issue to the Court's attention and said, we would like a ruling on the format. Excuse me. I don't understand your comment that it wasn't clear with the defendant that this was going to happen before anybody testified. If it did, I thought it was crystal clear. And he went through a whole, let me see, well, let me give you an example. Was raining outside? Yes, it was raining outside. How do you know it was raining outside? Well, I looked out the window and I could see that it was raining. So I don't understand your argument that it was unclear or something. The ruling, let me rephrase, the ruling was clear. If Mr. Belton would not be questioned by his appointed counsel, what was not clear was whether appointed counsel would question him. So this is at SCR 990 to 993. The district judge asked Mr. Fitzpatrick, is it the case that if Mr. Belton testifies against your advice, you will not examine him? And Mr. Fitzpatrick responds, I'm afraid we are getting close to privileged materials. Mr. Fitzpatrick also said it's a possibility that he might not examine Mr. Belton. He called it a sticky situation and a conundrum. But it's not at all clear that if Mr. Belton had chosen to testify, Mr. Fitzpatrick wouldn't have questioned him. And he was not on his time on counsel either. He was the appointed lawyer. So it was only if Mr. Belton testified and wouldn't be questioned by his appointed counsel that the court said it would be in the narrative. And I should also add that it was after Judge Tiger asked Mr. Belton, well, what would you propose? And Mr. Belton said he wanted to testify in the narrative. And Judge Tiger's claims, as you said, Judge Tiger explains to Mr. Belton why that wasn't feasible under the circumstances here and why it would prejudice the government. But even if the claim is not waived and even if loose doesn't apply here, the claim which is to fail on the merits because these were reasonable conditions, this colloquy about the narrative testimony came up after Judge Tiger had to threaten to remove Mr. Belton from the courtroom or hold him in contempt because of outbursts. And so these were absolutely reasonable concerns that Judge Tiger had about, frankly, the service that would be created if Mr. Belton were allowed to deliver a monologue. Could you describe what about the outbursts that were so prejudicial that it couldn't be handled by an objection after the fact and an instruction to the jury? I mean, that happens all the time as something happens and the jury is told to disregard what just happened. What does he say that was so prejudicial that that kind of procedure wouldn't have worked? Well, there was a long—Judge Tiger made facts and findings that there was a long history of courtroom misbehavior both in pre-trial hearings and during the trial. Specifically here, what had happened right before this colloquy was that Mr. Belton shouted out objections several times because his attorney was not making the objections that he thought the attorneys should be making. But that still doesn't answer the question about— It seems to me that in order for it not to be possible to instruct the jury to disregard something, it has to be something that they just can't disregard because it's so prejudicial and so inflammatory. I see. Was he saying anything that was that inflammatory? I mean, just saying objection is—I mean, the court could say he forgot that he just said that. That doesn't seem like a big deal. In the trial itself in front of the jury, I don't believe Mr. Belton had made some of the wild claims about government misconduct that he'd made in pre-trial hearings. In pre-trial hearings and in pre-trial filings, he'd accused all of his prior attorneys of misconduct, chicanery and words like that. But that wouldn't be relevant in the context of the trial to say bad things about previous lawyers. Precisely. So I guess that seems to suggest that there might have been another way to handle this. What is our standard of review on this issue? Is it abuse of discretion in setting out this formula? What is it to offer review? It's abuse of discretion on the conditions imposed on the testimony. It's clear error on factual findings. And so here the judge made a factual finding that the history of this case demonstrates, I think clearly, that there would be a grave risk of reaching out an absolute certainty of unfairness to the government if I were to order other ones than as if I were to allow you to testify on the narrative. That's 992. In what sense is that a legal finding versus a legal finding? I'm sorry, a factual finding versus a legal finding, though? I mean, saying that it's unfair to the government sounds like an illegal conclusion more than something factual, doesn't it? Well, I think it was factual in the sense that there was a long history of Mr. Belton's outbursts and frivolous allegations of misconduct against prior defense attorneys in the government. In that sense, I think it was factual. Just as the court made factual findings that Mr. Belton had engaged in a pattern of deletery behavior and that sort of thing, the rise in outbursts, aren't there not, that are deemed durable by instructions and can lead to a mistrial? Where did that come from, an outburst? Yes, I think that was on Judge Tiger's mind that there were certain things that Mr. Belton might say if he testified in a narrative and the bill couldn't be overrun. I just have trouble understanding. I mean, if this is someone who makes random outbursts, I have trouble understanding how we're telling him to ask questions and the answer is going to stop the outburst. And I'm still not sure I've heard you say something so exclamatory that he's accused the government of that it would cause mistrial. Well, Judge Tiger explains to Mr. Belton that the reason the question-and-answer format is typically used is that the question itself is not evidence and so the government would be able to object to the question. The answer would be evidence. So if it were just delivered in a narrative... No, I understand that it seems almost like a non-responsive solution. I mean, if this is someone who makes random outbursts, then he could ask a question and then give a random outburst as the answer. I just don't quite see how it prevents that. Well, Judge Tiger said, I'm not thrilled with this solution either, the self-examination solution, but I think if he will not be examined by Mr. Fitzpatrick, this is the next best thing. So it's not as if Judge Tiger thought this was a perfect solution. But again, this is a view for peace of discretion and if the judge was dealing with a difficult defendant, who had a history of misconduct in the case and acted reasonably? Are you aware of any case... So I know you cited cases where a client had been representing themselves and had been questioning other witnesses and then proceeded to have to question themselves. Are you aware of any case, or like this one, where there was a lawyer who questioned the other witnesses but then the client had to question themselves and the court described it or said it was okay? I have trouble finding a case discussing this type of situation. Yes, I don't know that there's one quite on point because... Well, so two points on that. I don't know that there's one quite on point because this is an unusual situation. I think the typical role in here would have been you're represented by an attorney, your attorney will question you. But in an effort to accommodate Mr. Belton's demands, just trying to come up with a compromise solution, a case I would point the court to, in the non-corruption context, is the Gallagher case, which we cite in there. The defendant, there was sort of a hybrid representation. He had a public counsel, but he had also acted as an attorney in some respects, I think. And the defendant testified once. He left the stand, and the defense asked to recall him because there were certain questions he wanted his attorney to ask him. The attorney asked a couple of those questions, but I think not all of them. And then the defendant said, I would like to continue testifying in the narrative. And the judge said, well, there are no questions pending from your lawyer, so I'm going to ask you to step off from the stand. Yeah, it just seems like that's a very different case. I mean, the lawyer in there had already said that anything the client said would be redundant. I mean, it's a very different situation in here where I can't justify it all yet. And so the next, I think, analogous specific cases are the pro se cases or the cases where there's co-stand-by counsel asking some questions, not others. And I think the Becton case from the Fourth Circuit would be another analogous, although not perfectly analogous situation. They all consider the likelihood that the defendant might be the right order, might not be the right order, and the likelihood that the narrative testimony would have been perjurous based on the way the facts had developed. I don't know that that's clear from the record. I also don't know that it's clear that the reason Mr. Fitzpatrick thought he might not be questioning Mr. Dalton is that it was a violation of his ethical duties and the defense has asserted that that was the motivation here. But I don't know that that's clear. There were several next-party conversations between Mr. Dalton as attorney and the district judge and the district's investigator that the government wasn't privy to and that these matters may have been discussed there, but that's not the case. That wasn't the fact that it likely be an effective assistance of counsel. I'm sorry, your second question. The fact that Mr. Fitzpatrick didn't ask to withdraw, will that be an effective assistance? The fact that he refused to answer questions for reasons other than his ethical duties. Refused to answer or refused to ask? Refused to ask. Refused to question the defendant. I don't know if that would be an effective assistance, but I don't think that, again, I don't think it's clear from the record what motivated this. The district court seemed to think it was that he was against Mr. Fitzpatrick's particular advice whether Mr. Dalton should testify. And I can point you to the site of that. That's it. I see we don't have anyone. So just following on from Judge Gilford's question, in item 2255 proceeding, there could be evidence about all of these things that we're guessing about right at the moment. Correct. Right, and so the privilege issues would probably go away pretty nicely. But of course, Mr. Dalton would need additional prejudice to be underspecified. And on this record, I don't know how he would be able to do that, but again, the 2255 issues are not before the court right now. So I know you're arguing that this isn't an error at all, but if we say for a moment that this might have been an error in violating his right to testify, what is your best argument for why that isn't a structural error? Because structural errors are narrow and carefully circumscribed. And again, we think this is an evidentiary ruling about the format of the defense's potential testimony. And the defense has already said it is speculative whether he was willing to testify at all. And ultimately, at the end of the trial, or towards the end of the trial, defense counsel, certainly Mr. Dalton, quote, does not want to testify. That's in his CR 1047. Okay, so those are all arguments why this wasn't an error, why his right wasn't violated. But if we go on to, this was a violation of the right to testify. We have a case called Gill and Water, United States versus Gill and Water, where our court said, we don't need to reach the question of whether a violation of the right to testify is structural because, we said there, we don't know what he would have said, so we can't say it's not harmless. So we don't even have to think about whether it's structural, we'll treat it as harmless, but then say it's not harmless, because we don't know what he would have said, so how can we say that it's harmless? Again, a pretty simple doubt. I'm struggling with how, you must have an argument for how we should do something different than Gill and Water, because you want us to say that it's harmless, but I'm struggling to figure out how we would do that. Well, I think because it was not a violation of his right to testify, he could have testified, and there were conditions on the format of that testimony, he could testify. So that's again, I mean, are you just saying you're having a cease and terror? I mean, if someone's right to testify is violated, so they don't testify, is there any way to evaluate whether that's a harmless error or not? Well, I think you would look at it, I mean, if the court rules that something is structural then harmless error doesn't apply, so I'm going to assume that you're talking about harmless error analysis here, and you would look at the potential testimony in the context of the case, and here, the Guttman's case was very strong. The potency's not challenging. I'm running out of time, if I can finish my answer. The Guttman's case was very strong. You had precipitate witnesses, caught Mr. Guttman while dealing drugs in a car full of drugs with a loaded gun in his waistband. The defense is not challenging, but it's efficiency is the evidence, and the defense hasn't pointed to anything in the potential testimony that would have changed the outcome, or possibly could have changed the outcome of the trial. Thank you, counsel. Thank you very much. Ms. Young, you may have something else. Thank you, Your Honor. The reason I believe this is structural error... Could you take the mic, please? Thank you. The reason I believe that this is structural error, and not merely an evidentiary ruling that's discretionary with the court, is because I need to look at it from Mr. Felton's point of view. Mr. Felton is a defendant in a criminal case. He has an attorney who represents him, and he's being told by this judge, look, if you are going to testify against your attorney's advice, then you are going to have to construct an examination within the rules of evidence, and you're going to have to ask yourself questions from this stand. That, for a criminal defendant, or someone in Mr. Felton's shoes, takes away any ability he might have to testify. It fundamentally interferes with his right to testify. And these rulings are premature. Again, they are not... There's nothing in the record that says the counsel has advised Mr. Felton not to testify. The record speaks opposite. The record says that they hadn't made a decision, and both Mr. Felton and the defense counsel said to the judge, you know, this is hypothetical, we're not ready yet. So say, I just would like you to respond to what your opposing counsel said. I know you're arguing it's structural, but we don't know what he would have said, right? So why can't the government say, look, the evidence was so overwhelming here that there's nothing he could have said that would have made a difference to the outcome? Why is that an appropriate argument about the type of error you're alleging? For the very reason that we don't know what he would have said. There might be a scenario where he could show that he was somewhere else, or something along those lines. How can it ever be harmless when we have no idea what he would have said? I have nothing further on the story. Questions? I don't think that we do. Thank you. Thank you. This case is just starting to submit it, and we appreciate very much the arguments of both counsel. They've been very helpful.
judges: Graber, Friedland, Guilford